UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

SUSAN MOORE,                          §
Plaintiff,                            §
                                      §
v.                                    §
                                      §        CASE NO. 2:17-cv-00531-JRG-RSP
ROBERTO HERNANDEZ,                    §
AND   JOHN   L.   BILLINGSLEY         §
TRUCKING, LLC.                        §
Defendants.                           §

## DEFENDANTS' MOTION TO STRIKE LATE DESIGNATED EXPERT OPINIONS

COME NOW, ROBERTO HERNANDEZ and JOHN L. BILLINGSLEY TRUCKING, LLC, Defendants in the above-entitled and numbered cause, and file this their Motion to Strike Late Designated Expert Opinions, and in support show the Court as follows:

## I.
## FACTUAL BACKGROUND

This case arises out of a motor vehicle accident involving an eighteen-wheeler operated by Defendant Hernandez and a vehicle operated by Plaintiff Susan Moore which occurred on or about July 22, 2015 in Dallas, Dallas County, Texas. Plaintiff claims to have sustained personal injuries as a result of Defendants' negligence. The trial is currently scheduled for March 19, 2018. The parties have operated under a docket control order which states that the discovery deadline was **December 21, 2017** and the Pretrial Disclosure deadline was **January 18, 2018**. *See* Docket Control Order, Sept. 25, 2017, Doc. 11. Pursuant to supplemental orders issued by this Court, Plaintiff's deadline to provide expert reports was **November 23, 2017** and Defendants' deadline to provide expert reports was **December 14, 2017**.

**On November 23, 2017**, Plaintiff provided Defendants with the expert report of Ed Brady from ENR Consulting, LLC. Mr. Brady's expert report contained opinions regarding Defendant John L. Billingsley Trucking's hiring and training procedures and the driver

qualifications of Defendant Hernandez under federal regulations. *See* Exhibit "1" Original Expert Report of Ed Brady, Nov. 22, 2017.

On **February 22, 2018**, **three months after Plaintiff's expert report deadline, over one month after the Pretrial Disclosure deadline, and less than one month before the current trial setting**, Plaintiff sent Defendants a supplemental expert report containing Mr. Brady's opinions which are wholly unrelated to his original expert report opinions.  In the new report, Mr. Brady for the first time offers opinions about Defendant Hernandez's driving record and Defendant John L. Billingsley Trucking's failure to properly supervise Defendant Hernandez as a driver. *See* Exhibit "2", Mr. Brady's late Supplement Report, Feb. 22, 2018.

## II.
## <u>MOTION TO STRIKE</u>

Pursuant to Federal Rule of Civil Procedure 37(c) (1), Defendants ask that the Court strike the Plaintiff's untimely and completely new opinions of Mr. Brady because of unfair surprise and prejudice to Defendants.

Federal Rule of Civil Procedure 26(e) requires parties to supplement previous disclosures if they learn that such disclosures are incorrect or incomplete. This duty extends to information included in expert reports and given during expert depositions. Fed. R. Civ. P. 26(e)(2). Parties must make these supplemental expert disclosures by the time Rule 26(a)(3) pretrial disclosures are due. *Id.* The Rule's basic purpose is "preventing prejudice or surprise." *Reed v. Iowa Marine & Repair Corp.,* 16 F.3d 82, 85 (5th Cir. 1994). However, supplemental "disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1995).  Rather, the Advisory Committee Notes to Rule 26 of the Federal Rules of Civil Procedure further states that initial reports must be "detailed and complete." *See* Fed. R. Civ. P. 26 advisory committee's note.

When a party fails to disclose information required by Federal Rule of Civil Procedure 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion . . . or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Accordingly, a supplemental expert report that states additional opinions or seeks to strengthen or deepen opinions expressed in the original report is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c). *See Bean Meridian L.L.C. v. Suzuki Motor Corp. (In re C.F. Bean L.L.C.)*, 841 F.3d 365, 371–372 (5th Cir. 2016) (disclosures must be "supplemental" and should not add new information or expand expert's analysis and opinions).

In the present case, Pretrial Disclosures from all parties were due on January 18, 2018. Plaintiff produced an expert report on February 22, 2018, less than one month prior to trial and over a month after the expiration of the Pretrial Disclosure deadline. The supplemental expert report is replete with completely new and unrelated opinions regarding Defendant Hernandez's driving record and Defendant John L. Billingsley Trucking's supervision of drivers. Plaintiff's late production of Mr. Brady's supplemental expert report fully fails to meet the requirements of timely designation pursuant to the Federal Rules of Civil Procedure, is without justification, and serves only to unfairly prejudice and harm Defendants. Defendants request that the Court strike the wholly new and untimely expert opinions of Mr. Brady regarding Defendant Hernandez's driving record and Defendant John L. Billingsley Trucking's supervision of Defendant Hernandez provided on February 22, 2018 and instruct Mr. Brady and Plaintiff's attorneys that Mr. Brady cannot give any opinions identified in his February 22, 2018 report.  In the alternative, Defendants seek leave to depose Mr. Brady prior to the trial of this matter.

**III.**

**CONCLUSION**

Defendants request that the Court strike the untimely supplemented expert report of Mr. Ed Brady and instruct Mr. Brady and Plaintiff's attorneys that Mr. Brady cannot give any opinions identified in his February 22, 2018 report.  In the alternative, Defendants seek leave to depose Mr. Brady prior to the trial of this matter.

WHEREFORE, PREMISES CONSIDERED, Defendants Roberto Hernandez and John L. Billingsley Trucking, LLC respectfully request that the Court grant their Motion to Strike Late Designated Expert opinions and for such other and further relief to which Defendants may show themselves to be justly entitled.

Respectfully submitted,

**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**

By:           */s/Alan Moore*

**MARK J. DYER**
State Bar No. 06317500
dyer@mdjwlaw.com
**ALAN MOORE**
State Bar No. 14320075
amoore@mdjwlaw.com
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
(214) 420-5500
(214) 420-5501 (telecopier)

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned previously conferred with Plaintiff's counsel who advised he is opposed to the foregoing Motion.

           */s/Alan Moore*
**ALAN MOORE**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been e-served to all attorneys of record, in compliance with Rule 5 of the Federal Rules of Civil Procedure, on this 28th day of February, 2018.

Scott Chafin
Daniel Poolson
Gregorio, Chafin, Johnson, Poolson & Tabor, LLC
3000 W. Esplanade Ave., Ste. 200
Metairie, LA 70002

James A. Holmes
Law Office of James Holmes, P.C.
212 South Marshall
Henderson, Texas 75654

*/s/Alan Moore*
**ALAN MOORE**

Exhibit "1"

**ENR Consulting, LLC**
**P.O. BOX 154867**
**Waco, TX 76715**

November 22, 2017

Mr. Daniel J. Poolson Jr.
Mr. Scott J. Chafin, Jr.
3000 West Esplanade Ave
Suite 200
Metairie, Louisiana 70002

Re:  Susan Moore v Roberto Hernandez and John L. Billingsley Trucking LLC

Dear Messrs. Poolson Jr. and Chafin, Jr:

You requested that I review certain documents relating to an accident that occurred on or about July 22, 2015, and render my professional opinions based upon personal knowledge, experience, education, training and expertise in the transportation industry, focusing on safety, regulatory compliance, fleet management, motor vehicle accident investigation, and industry standards.

**<u>General Information</u>**
Date and Time of Loss:  7/22/2015 at 14:39
Location: Dallas, TX Eastbound on IH-20, 28500 block of Lyndon B Johnson Highway
Weather: Clear
Ambience: Daylight
Roadway Type: Two way, Divided, Protected Median
Roadway Alignment: Straight, Level
Surface Condition: Dry
Traffic Control: Marked Lanes

Vehicle Involvement:
     #1: 2006 Freightliner Classic, USDOT # 01574442**
     **USDOT # 01574442 identified on the crash report is for John L Billingsley Logging LLC.  For all purposes, John L. Billingsley is the sole manager director of John L Billingsley Trucking LLC and John L Billingsley Logging LLC, and is responsible for the training of Mr. Roberto Hernandez.  Because discovery is ongoing and the corporate deposition of John L Billingsley Trucking LLC is upcoming, I reserve the right to amend this report in the event John L. Billingsley Logging LLC is the properly named party, but refer in this report to John L Billingsley Trucking LLC and John L Billingsley Logging LLC as one in the same, collectively as "Billingsley".

   #2: 2008 Dorsey Trailer
   #3: 2013 Chevrolet Camaro
Occupants:
   #1: Roberto Hernandez
   #3: Susan Moore


**<u>Experience and Qualifications</u>**

I am the principal owner of ENR Consulting, LLC, located in Axtell, Texas.  I provide consultation services and litigation support.  I have been in the commercial transportation industry for more than 30 years, and have extensive experience in risk management, human resources, accident and claims investigation, regulatory compliance, safety, security, claims administration, litigation management, insurance procurement, and transportation management. I have extensive experience in working in the operations, administrative, sales, facility maintenance, distribution and warehousing, claims investigation, and medical cost containment arenas.

I graduated from Texas Tech University with a Bachelor of Arts Degree in Political Science with a minor in English.  I have attended and instructed numerous transportation related seminars for many years.  I am currently the 2ndVice Chairman of the Safety Management Council (SMC)of the Texas Trucking Association (TXTA).   I am the past Chairman of the Board of Examiners for the SMC, past board member for the Texas Safety Association,  and past Chairman of the Driver Improvement Advisory Committee of the Texas Safety Association.  I have been certified as an instructor of the National Safety Council's Defensive Driving programs, both DDC-8 and PTD-8, the Hartford 3-D Defensive Driving program, and the Commercial Vehicle Safety Alliance's Operation Safe Driver Defensive Driving program.  I hold 2 Master Certificates under the USDOT/NTSI training program for the Federal Motor Carrier Safety Regulation.  I have a Certificate of Completion of the OSHA 30 Hour program, and am a Senior Certified Professional from the Society of Human Resources (SHRM).  I hold a nationally recognized certification as a Certified Fleet Safety-Director Level by the Texas Trucking Association and the University of North Texas.

I have been recognized for my contributions and dedication to the transportation industry, most recently as the Distinguished Safety Award recipient for 2017.

I have served in many leadership roles as a corporate officer, and director.  I remain very active in the trucking industry, and have been directly and indirectly involved in the oversight, administration, and investigation of motor vehicle accidents and work related injuries.  I am licensed as an All-Lines Adjuster by the Texas Department of Insurance.

**Documents Reviewed**
- Texas Police Crash Report dated 7/22/20215
- The US Department of Transportation Federal Motor Carrier Safety Administration's Federal Motor Carrier Safety Regulations,
- Safer Web Company Snapshot for USDOT #01574442
- Safety Management System/CSA for USDOT# 01574442
- Deposition Transcript of Joann Moreno
- Deposition Transcript of Roberto Hernandez
- Driver Qualification File/Personnel File documents produced on Roberto Hernandez

**Opinions**

The methodology utilized is based upon personal knowledge, experience, education, training and expertise in the transportation industry.  Focus is placed on safety, regulatory compliance, fleet management, motor vehicle accident investigation and industry standards in reviewing the evidence and materials provided, and listed.

I  have relied on the previous listed documents and publications, as well as motor vehicle accident investigation expertise and formal training in these current opinions and findings:

1.  Federal Motor Carrier Safety Regulations (FMCSR) Applicability
    Safety Measurement System Profile from USDOT on Billingsley, USDOT # 01574442.These records reflect that Billingsley is registered with the USDOT as an **Interstate Motor Carrier** engaged in Logging Commodities.  Part 390 of the FMCSR: General definition- *Commercial motor vehicle means any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle, (1) Has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight of 4,536 kg (10,001 pounds) or more, whichever is greater.*
    The tractor and trailer combination meet this definition and is regulated by the FMCSR.

2. SAFER WEB Company Snapshot for Billingsley USDOT # 01574442, show the Vehicle Out of Service Rates and the Driver Out of Service Rates for this motor carrier.  As of 11/10/2017, the Vehicle Out of Service Rate for USDOT # 01574442 is 75% while the National Average is 20.7%.  The Driver Out of Service Rate is 25% compared to the National Average of 5.5%

3. The iiX Motor Vehicle Report for Roberto Hernandez provided by Lumberman's to John L. Billingsley.

4. Part 382.401 **Retention of records.**

   (a) *General requirement.* Each employer shall maintain records of its alcohol misuse and controlled substances use prevention programs as provided in this section. The records shall be maintained in a secure location with controlled access.

(b) *Period of retention.* Each employer shall maintain the records in accordance with the following schedule:

(1) *Five years.* The following records shall be maintained for a minimum of five years:

(i) Records of driver alcohol test results indicating an alcohol concentration of 0.02 or greater,

(ii) Records of driver verified positive controlled substances test results,

(iii) Documentation of refusals to take required alcohol and/or controlled substances tests,

(iv) Driver evaluation and referrals,

(v) Calibration documentation,

(vi) Records related to the administration of the alcohol and controlled substances testing program, including records of all driver violations, and

(vii) A copy of each annual calendar year summary required by §382.403.

4.   Part 382.401(4) (4) *Indefinite period.* Records related to the education and training of breath alcohol technicians, screening test technicians, supervisors, and drivers shall be maintained by the employer while the individual performs the functions which require the training and for two years after ceasing to perform those functions

5.Part 382.401 (c)(2)(i)(ii)

(2) Records related to a driver's test results:

(i) The employer's copy of the alcohol test form, including the results of the test;

(ii) The employer's copy of the controlled substances test chain of custody and control form;

6.   Part 382   No driver who has engaged in conduct prohibited by subpart B of this part shall perform safety-sensitive functions, including driving a commercial motor vehicle, unless the driver has met the requirements of part 40, subpart O, of this title. No employer shall permit a driver who has engaged in conduct prohibited by subpart B of this part to perform safety-sensitive functions, including driving a commercial motor vehicle, unless the driver has met the requirements of part 40, subpart O, of this title. **Employer obligation to promulgate a policy on the misuse of alcohol and use of controlled substances.**

(a) *General requirements.* Each employer shall provide educational materials that explain the requirements of this part and the employer's policies and procedures with respect to meeting these requirements.

(1) The employer shall ensure that a copy of these materials is distributed to each driver prior to the start of alcohol and controlled substances testing under this part and to each driver subsequently hired or transferred into a position requiring driving a commercial motor vehicle.

(2) Each employer shall provide written notice to representatives of employee organizations of the availability of this information.

(b) *Required content.* The materials to be made available to drivers shall include detailed discussion of at least the following:

(1) The identity of the person designated by the employer to answer driver questions about the materials;

(2) The categories of drivers who are subject to the provisions of this part;

(3) Sufficient information about the safety-sensitive functions performed by those drivers to make clear what period of the work day the driver is required to be in compliance with this part;

(4) Specific information concerning driver conduct that is prohibited by this part;

(5) The circumstances under which a driver will be tested for alcohol and/or controlled substances under this part, including post-accident testing under §382.303(d);

(6) The procedures that will be used to test for the presence of alcohol and controlled substances, protect the driver and the integrity of the testing processes, safeguard the validity of the test results, and ensure that those results are attributed to the correct driver, including post-accident information, procedures and instructions required by §382.303(d);

(7) The requirement that a driver submit to alcohol and controlled substances tests administered in accordance with this part;

(8) An explanation of what constitutes a refusal to submit to an alcohol or controlled substances test and the attendant consequences;

(9) The consequences for drivers found to have violated subpart B of this part, including the requirement that the driver be removed immediately from safety-sensitive functions, and the procedures under part 40, subpart O, of this title;

(10) The consequences for drivers found to have an alcohol concentration of 0.02 or greater but less than 0.04;

(11) Information concerning the effects of alcohol and controlled substances use on an individual's health, work, and personal life; signs and symptoms of an alcohol or a controlled substances problem (the driver's or a co-worker's); and available methods of intervening when an alcohol or a controlled substances problem is suspected, including confrontation, referral to any employee assistance program and/or referral to management; and

(12) The requirement that the following personal information collected and maintained under this part shall be reported to the Clearinghouse:

(i) A verified positive, adulterated, or substituted drug test result;

(ii) An alcohol confirmation test with a concentration of 0.04 or higher;

(iii) A refusal to submit to any test required by subpart C of this part;

(iv) An employer's report of actual knowledge, as defined at §382.107:

(A) On duty alcohol use pursuant to §382.205;

(B) Pre-duty alcohol use pursuant to §382.207;

(C) Alcohol use following an accident pursuant to §382.209; and

(D) Controlled substance use pursuant to §382.213;

(v) A substance abuse professional (SAP as defined in §40.3 of this title) report of the successful completion of the return-to-duty process;

(vi) A negative return-to-duty test; and

(vii) An employer's report of completion of follow-up testing.

7.     Part 382.603 **Training for supervisors.**
Each employer shall ensure that all persons designated to supervise drivers receive at least 60 minutes of training on alcohol misuse and receive at least an additional 60 minutes of training on controlled substances use. The training will be used by the supervisors to determine whether reasonable suspicion exists to require a driver to undergo testing under §382.307. The training shall include the physical, behavioral, speech, and performance indicators of probable alcohol misuse and use of controlled substances. Recurrent training for supervisory personnel is not required.

8. Part 391.21 **Application for employment.**

(a) Except as provided in subpart G of this part, a person shall not drive a commercial motor vehicle unless he/she has completed and furnished the motor carrier that employs him/her with an application for employment that meets the requirements of paragraph (b) of this section.

(b) The application for employment shall be made on a form furnished by the motor carrier. Each application form must be completed by the applicant, must be signed by him/her, and must contain the following information:

(1) The name and address of the employing motor carrier;

(2) The applicant's name, address, date of birth, and social security number;

(3) The addresses at which the applicant has resided during the 3 years preceding the date on which the application is submitted;

(4) The date on which the application is submitted;

(5) The issuing State, number, and expiration date of each unexpired commercial motor vehicle operator's license or permit that has been issued to the applicant;

(6) The nature and extent of the applicant's experience in the operation of motor vehicles, including the type of equipment (such as buses, trucks, truck tractors, semitrailers, full trailers, and pole trailers) which he/she has operated;

(7) A list of all motor vehicle accidents in which the applicant was involved during the 3 years preceding the date the application is submitted, specifying the date and nature of each accident and any fatalities or personal injuries it caused;

(8) A list of all violations of motor vehicle laws or ordinances (other than violations involving only parking) of which the applicant was convicted or forfeited bond or collateral during the 3 years preceding the date the application is submitted;

(9) A statement setting forth in detail the facts and circumstances of any denial, revocation, or suspension of any license, permit, or privilege to operate a motor vehicle that has been issued to the applicant, or a statement that no such denial, revocation, or suspension has occurred;

(10)(i) A list of the names and addresses of the applicant's employers during the 3 years preceding the date the application is submitted,

(ii) The dates he or she was employed by that employer,

(iii) The reason for leaving the employ of that employer,

(iv) After October 29, 2004, whether the (A) Applicant was subject to the FMCSRs while employed by that previous employer,

(B) Job was designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing requirements as required by 49 CFR part 40;

(11) For those drivers applying to operate a commercial motor vehicle as defined by part 383 of this subchapter, a list of the names and addresses of the applicant's employers during the 7-year period preceding the 3 years contained in paragraph (b)(10) of this section for which the applicant was an operator of a commercial motor vehicle, together with the dates of employment and the reasons for leaving such employment; and

(12) The following certification and signature line, which must appear at the end of the application form and be signed by the applicant:

This certifies that this application was completed by me, and that all entries on it and information in it are true and complete to the best of my knowledge.

9. Part 391.23 **Investigation and inquiries.**

(a) Except as provided in subpart G of this part, each motor carrier shall make the following investigations and inquiries with respect to each driver it employs, other than a person who has been a regularly employed driver of the motor carrier for a continuous period which began before January 1, 1971:

(1) An inquiry to each State where the driver held or holds a motor vehicle operator's license or permit during the preceding 3 years to obtain that driver's motor vehicle record.

(2) An investigation of the driver's safety performance history with Department of Transportation regulated employers during the preceding three years.

(b) A copy of the motor vehicle record(s) obtained in response to the inquiry or inquiries to each State required by paragraph (a)(1) of this section must be placed in the driver qualification file within 30 days of the date the driver's employment begins and be retained in compliance with §391.51. If no motor vehicle record is received from the State or States required to submit this response, the motor carrier must document a good faith effort to obtain such information, and certify that no record exists for that driver in that State or States. The inquiry to the State driver licensing agency or agencies must be made in the form and manner each agency prescribes.

(c)(1) Replies to the investigations of the driver's safety performance history required by paragraph (a)(2) of this section, or documentation of good faith efforts to obtain the investigation data, must be placed in the driver investigation history file, after October 29, 2004, within 30 days of the date the driver's employment begins. Any period of time required to exercise the driver's due process rights to review the information received, request a previous employer to correct or include a rebuttal, is separate and apart from this 30-day requirement to document investigation of the driver safety performance history data.

*1.* (2) The investigation may consist of personal interviews, telephone interviews, letters, or any other method for investigating that the carrier deems appropriate. Each motor carrier must make a written record with respect to each previous employer contacted, or good faith efforts to do so. The record must include the previous employer's name and address, the date the previous employer was contacted, or the attempts made, and the information received about the driver from the previous employer. Failures to contact a previous employer, or of them to provide the required safety performance history information, must be documented. The record must be maintained pursuant to §391

10.  Part 391.25 **Annual inquiry and review of driving record.**

(a) Except as provided in subpart G of this part, each motor carrier shall, at least once every 12 months, make an inquiry to obtain the motor vehicle record of each driver it employs, covering at least the preceding 12 months, to the appropriate agency of every State in which the driver held a commercial motor vehicle operator's license or permit during the time period.

(b) Except as provided in subpart G of this part, each motor carrier shall, at least once every 12 months, review the motor vehicle record of each driver it employs to determine whether that driver meets minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle pursuant to §391.15.

(1) The motor carrier must consider any evidence that the driver has violated any applicable Federal Motor Carrier Safety Regulations in this subchapter or Hazardous Materials Regulations (49 CFR chapter I, subchapter C).

(2) The motor carrier must consider the driver's accident record and any evidence that the driver has violated laws governing the operation of motor vehicles, and must give great weight to violations, such as speeding, reckless driving, and operating while under the influence of alcohol or drugs, that indicate that the driver has exhibited a disregard for the safety of the public.

(c) *Recordkeeping.* (1) A copy of the motor vehicle record required by paragraph (a) of this section shall be maintained in the driver's qualification file.

2.  (2) A note, including the name of the person who performed the review of the driving record required by paragraph (b) of this section and the date of such review, shall be maintained in the driver's qualification file.

11.  Part 391.27 **391.27   Record of violations.**

(a) Except as provided in subpart G of this part, each motor carrier shall, at least once every 12 months, require each driver it employs to prepare and furnish it with a list of all violations of motor vehicle traffic laws and ordinances (other than violations involving only parking) of which the driver has been convicted or on account of which he/she has forfeited bond or collateral during the preceding 12 months.

3.  (b) Each driver shall furnish the list required in accordance with paragraph (a) of this section. If the driver has not been convicted of, or forfeited bond or collateral on account of, any violation which must be listed, he/she shall so certify

12.  Part 391.41 **Physical qualifications for drivers.**
(a)(1)(i) A person subject to this part must not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so, and, except as provided in paragraph (a)(2) of this section, when on-duty has on his or her person the original, or a copy, of a current medical examiner's certificate that he or she is physically qualified to drive a commercial motor vehicle. NOTE: Effective December 29, 1991, the FMCSA Administrator determined that the new Licencia Federal de Conductor issued by the

United Mexican States is recognized as proof of medical fitness to drive a CMV. The United States and Canada entered into a Reciprocity Agreement, effective March 30, 1999, recognizing that a Canadian commercial driver's license is proof of medical fitness to drive a CMV. Therefore, Canadian and Mexican CMV drivers are not required to have in their possession a medical examiner's certificate if the driver has been issued, and possesses, a valid commercial driver license issued by the United Mexican States, or a Canadian Province or Territory and whose license and medical status, including any waiver or exemption, can be electronically verified. Drivers from any of the countries who have received a medical authorization that deviates from the mutually accepted compatible medical standards of the resident country are not qualified to drive a CMV in the other countries. For example, Canadian drivers who do not meet the medical fitness provisions of the Canadian National Safety Code for Motor Carriers, but are issued a waiver by one of the Canadian Provinces or Territories, are not qualified to drive a CMV in the United States. In addition, U.S. drivers who received a medical variance from FMCSA are not qualified to drive a CMV in Canada.

13. Part 391.51 **General requirements for driver qualification files.**

(a) Each motor carrier shall maintain a driver qualification file for each driver it employs. A driver's qualification file may be combined with his/her personnel file.

(b) The qualification file for a driver must include:

(1) The driver's application for employment completed in accordance with §391.21;

(2) A copy of the motor vehicle record received from each State record pursuant to §391.23(a)(1);

(3) The certificate of driver's road test issued to the driver pursuant to §391.31(e), or a copy of the license or certificate which the motor carrier accepted as equivalent to the driver's road test pursuant to §391.33;

(4) The motor vehicle record received from each State driver licensing agency to the annual driver record inquiry required by §391.25(a);

(5) A note relating to the annual review of the driver's driving record as required by §391.25(c)(2);

(6) A list or certificate relating to violations of motor vehicle laws and ordinances required by §391.27;

*1.* (7)(i) The medical examiner's certificate as required by §391.43(g) or a legible copy of the certificate.

**<u>Conclusions</u>**

This conclusion is within a fair and reasonable degree of certainty, derived from the review of available evidence, working experience, and application of regulatory compliance, education, and industry training.

I offer the following conclusion:

1. Billingsley has a USDOT # 01574442 issued FMCSA, and registered as an interstate motor carrier. Billingsley is a motor carrier whose CSA scores are a cause for concern being that they are significantly higher than the National Average Out of Service Rates.

2. The motor carrier, Billingsley did not act in accordance with the Federal Motor Carrier Safety regulations by:

    a. Did not have a completed application on Mr. Hernandez. Information was left blank that is required by the regulations

    b. It did not meet the requirement of having a complete previous employment history

    c. It did not provide the required investigations and inquires into Mr. Hernandez's previous driving history

    d. It did not provide the annual review of Mr. Hernandez's driving record, nor did it provide the drivers annual statement of moving violations

    e. The DQ file information does not have a complete medical certification with gaps in the expiration dates of his medical certifications

    f. The DQ file information does not reflect that he has a current Commercial Driver's License. There are gaps between expiration dates of his CDL, and there is an "Identification Card" in the file which is not evidence of a current CDL

    g. The DQ file does not have the required pre-employment drug test, nor the chain of custody control form as required

    h. There is no evidence that Mr. Hernandez received the required drug and alcohol training as required

    i. The deposition transcript of Joann Moreno reflects the testimony of an independent witness to the accident. Her testimony is that Mr. Hernandez was driving erratically and changed lanes into Susan Moore's lane of travel causing this accident. Such erratic driving by Mr. Hernandez may have been caused by a distraction in the cab of his truck, but he did not change lanes safely and struck the vehicle driven by Susan Moore.

    j. The Texas Police Crash Report is based upon the statements made by the parties to the accident. No where on the report does Officer Aguilar list the witness, Joann Moreno.

    k. Mr. Hernandez's deposition testimony was not credible in my experience and estimation.

It is my professional opinion that the fault for this accident was proximately caused by Mr. Hernandez's unsafe driving, and the failure of Billingsley to properly train its driver and did not properly qualify Mr. Hernandez as a driver per the Federal Motor Carrier Safety Regulations. This concludes my initial report on this matter, as of November 22, 2017.

I respectfully reserve the right to supplement opinions, in the event additional materials become available.

*Ed Brady* electronic signature

Ed Brady, CFS, SHRM-SCP
Principal
ENR Consulting, LLC

Exhibit "2"

**ENR Consulting, LLC**
**P.O. BOX 154867**
**Waco, TX 76715**

February 22, 2018

Mr. Daniel J. Poolson Jr.
Mr. Scott J. Chafin, Jr.
3000 West Esplanade Ave
Suite 200
Metairie, Louisiana 70002

Re:  <u>Supplemental Report - Susan Moore v Roberto Hernandez and John L. Billingsley Trucking LLC</u>

Dear Mr. Poolson and Mr. Chafin:

In response to the additional records provided me, I am supplementing my original report after reviewing the following:

**Additional Documents Reviewed**
- Written Deposition of Cynthia Fowler, Deputy Custodian, License and Record Services. Texas Department of Public Safety, GCJPT-TXDEPTSAFETY-1-371;
- Open Records Request to Angelina County Sheriff's Office-Hernandez 001-017; and
- ATT Records, GCJPT-ATT-1-18; and
- Deposition Transcript of Kellishia Ferguson.

**Opinions**
The methodology utilized is based upon personal knowledge, experience, education, training and expertise in the transportation industry.  Focus is placed on safety, regulatory compliance, fleet management, motor vehicle accident investigation and industry standards in reviewing the evidence and materials provided, and listed.

I have relied on previous listed documents and publications from my initial report, additional documents provided and listed above, as well as motor vehicle accident investigation expertise and formal training in these current opinions and findings:

**TXDPS Deputy Custodian responses to written depositions: GCJPT-TXDEPTSAFETY 1-7**
1. There are six separate Enforcement Actions reflected as "REVOKED-SEX OFFENDER" between November 23, 2003 and November 4, 2016, with five of the actions occurring before the date of the accident.

**Page 1 of 4**

2. There are three Enforcement Actions reflected as "Denied Renewal-Failure To Appear", and are dated March 7, 2000, and February 10, 2016, with two of the actions occurring before the date of the accident.

3. Since 2012, there are 21 convictions of violations listed in the Events reflected as:

   a. 4/26/2012-Defective Brakes-Conviction
   b. 5/08/2013-Defective Brakes-Conviction
   c. 5/08/2013-Operate Unregistered Motor Vehicle-Conviction
   d. 6/13/2013-Operate Unregistered Motor Vehicle-Conviction
   e. 6/13/2013-Defective Brakes-Conviction
   f. 6/25/2013-MVI Inspection Violation-Conviction
   g. 7/03/2013-Over Gross Weight-Conviction
   h. 9/11/2013-MVI Inspection Violation-Conviction
   i. 9/11/2013-Display Expired License Plates-Conviction
   j. 9/18/2013-Operate Unregistered Motor Vehicle-Conviction
   k. 10/10/2013-Operate Unregistered Motor Vehicle-Conviction
   l. 10/11/2013-Display Expired License Plates-Conviction
   m. 11/20/2013-Operate Unregistered Motor Vehicle-Conviction
   n. 6/16/2014-MVI Inspection Violation-Conviction
   o. 6/24/2014-MVI Inspection Violation-Conviction
   p. 8/31/2014-Bail Jumping-Failure To Appear-Conviction
   q. 3/24/2015-Driving While License Disqualified-Conviction
   r. 3/24/2015-Weight Violation 3rd Offense-Conviction
   s. 11/09/2015-Speeding Equal to or Greater than 10% Above Posted Limit-Conviction
   t. 11/10/2015-Defective Brakes-Conviction
   u. 11/10/2015-Display Expired License Plates-Conviction

These additional records further support the conclusions contained in my original report dated November 22, 2017. Specifically, the comments to 49 CFR § 391.25 provide:

> The motor carrier must consider as much information about the driver's experience as is **reasonably available. This would include all known violations**, whether or not they are part of an official record maintained by a State, **as well as any other information that would indicate the driver has shown a lack of due regard for the safety of the public. Violations of traffic and criminal laws**, as well as the driver's involvement in motor vehicle accidents, are such indications and must be considered. **A violation of size and weight laws should also be considered.**

(emphasis added)

Despite Roberto Hernandez' repeated violation convictions, including defective brakes, overweight vehicle, expired license plates, bail jumping, operating unregistered motor vehicle, inspection violations, driving while license disqualified, his complete lack of due regard for the

safety of the public, and his multiple revocations as a result of being convicted as a sex offender, Billingsley allowed Roberto Hernandez to operate its commercial motor vehicle on the date of the accident, July 22, 2015.

## ATT Records-GCJPT-ATT-1-18
ATT records reflect considerable usage for phone number 936-240-5000, both data and voice, on 7/22/2015 all throughout the day.  The usage on the records indicates Roberto Hernandez used his phone throughout the course of the day of the accident, 7/22/2015, both before and after the accident.  Presuming this to be true, the ATT Records directly contradict the prior testimony of Roberto Hernandez and confirm Roberto Hernandez failed to properly operate the commercial motor vehicle on the date of the accident-see deposition transcript of Roberto Hernandez: page 16, lines 22, 24, and 25, and page 17, line 2.

## Conclusions
I maintain all of the opinions and conclusions in my original report dated November 22, 2017, and these additional conclusions are within a fair and reasonable degree of certainty, derived from the review of available evidence, working experience, and application of regulatory compliance, education, and industry training.

I offer the following additional conclusions:
1. By entrusting its commercial motor vehicle to Roberto Hernandez, the motor carrier, Billingsley, failed to properly entrust its commercial motor vehicle to a qualified driver in violation of the Federal Motor Carrier Safety Regulations.
2. The motor carrier, Billingsley, failed to properly supervise Roberto Hernandez by allowing Roberto Hernandez to operate a commercial motor vehicle while having a poor driving record, which contained a very large number of driving record violations.
3. The motor carrier, Billingsley, did not conduct an annual review of Roberto Hernandez's driving record as required by the Federal Motor Carrier Safety Regulations, nor did it require Roberto Hernandez to provide the driver's annual statement of moving violations. Roberto Hernandez failed to notify his employer of his commercial driver's license disqualification, and the weight violation 3rd offense he received in March of 2015.  There is no documentation in the driver qualification file that Billingsley took any corrective action with regard to these two additional violations. During the term of his employment with Billingsley, Mr. Roberto Hernandez received 12 convictions of violations.  There is no documentation provided that demonstrates Billingsley took any corrective action with regard to Mr. Roberto Hernandez' poor driving history record.
4. Roberto Hernandez' ability to maintain his commercial driver's license is lacking, as evidenced by the large number of times his driving privileges been revoked or suspended.

It is my professional opinion that the fault for this accident was caused by:
1. Roberto Hernandez's unsafe driving,
2. The failure of Billingsley to properly train its driver,

**Page 3 of 4**

3. The failure of Billingsley to properly qualify Roberto Hernandez as a driver per the Federal Motor Carrier Safety Regulations,

4. The failure of Billingsley to properly supervise Roberto Hernandez by allowing him to continue to drive a commercial motor vehicle while he possessed a poor driving history record, demonstrated poor driving habits, and exhibited a complete lack of due regard for the safety of the public, and

5. Billingsley's entrustment of a commercial motor vehicle to Roberto Hernandez.

This concludes my supplemental report on this matter, as of February 22, 2018.

I respectfully reserve the right to supplement opinions, in the event additional materials become available.

Sincerely,

Ed Brady, CFS, SHRM-SCP
Principal
ENR Consulting, LLC